FOSTER & HAUER, PLC
5110 N. 44th St., Ste. 200L
Phoenix, AZ 85018
(602) 343-1492 (Office)
(480) 365-0949 (Facsimile)
jon@fosterhauer.com

Jonathan E. Hauer, State Bar #023928
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Martinez, a married woman,<br><br>Plaintiff,<br><br>vs.<br><br>Edward D. Jones & Co., dba Edward Jones, a limited partnership authorized to and doing business in Arizona,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff alleges:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendant for defamation and unlawful retaliation and termination in violation of the whistleblower provisions of the Dodd–Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. §78u-6(h) ("Dodd-Frank") and the Arizona Employment Protection Act, A.R.S. § 23-1501 ("AEPA").

## JURISDICTION AND VENUE

2. This action arises under Section 21F(h)(1) of Dodd-Frank, 15 U.S.C. §78u-

6(h)(1). The jurisdiction of the Court over this matter is founded upon 28 U.S.C. §§ 1331 as well as pursuant to Dodd-Frank under 15 U.S.C. §78u-6(h)(1)(B).

3. This Court also has jurisdiction of Plaintiff's claim based on the laws of the State of Arizona based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Defendant is subject to the personal jurisdiction of this court.

5. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391, because Defendant does business in Arizona, and because a substantial part of the events giving rise to Plaintiff's claim occurred in this district.

## PARTIES

6. At all times material hereto, Plaintiff was and continues to be a resident of Maricopa County, Arizona.

7. At all times material hereto, Defendant did business at 8640 S. River Pkwy, Tempe, AZ 85284.

8. At all relevant times, Plaintiff was an "employee" of Defendant.

## FACTUAL BACKGROUND

9. Defendant hired Plaintiff as a Financial Advisor ("FA") in January 2011.

10. In November 2012, Plaintiff discovered evidence that she believed demonstrated that her Branch Office Administrator ("BOA"), Eleanor Mittleman, had falsely recorded working hours on company timesheets; generated positive reviews for herself and made it look as though Plaintiff generated these reviews; and was performing unauthorized trades in her own accounts in violation of SEC Regulations.

11. On December 7, 2012, Plaintiff contacted Associate Relations Supervisor Martha Schneberger and Linda [last name unknown] at Edward Jones' HR Help Line to report her allegations concerning Ms. Mittleman.

12. On December 8, 2012, Plaintiff discovered evidence that she believed demonstrated that Ms. Mittleman had violated SEC regulations by placing sensitive client documents into a publicly accessible trash bin rather shredding them.

13. On December 10, 2012, Plaintiff contacted Defendant's HR Help line to report allegations that Ms. Mittleman had violated SEC regulations by placing sensitive client documents into a publicly accessible trash bin rather shredding them.

14. On December 10, 2012, Plaintiff contacted Regional Leader Thane Thalman and reiterated her concerns about Ms. Mittleman actions.

15. Mr. Thalman advised Plaintiff that that Ms. Mittleman's behavior was "no problem" and that BOAs do this "all of the time," yet advised Plaintiff to report the evidence to Defendant's Compliance Relations division.

16. On December 10, 2012, Plaintiff reported her allegations concerning Ms. Mittleman's timecards, reviews, unauthorized trades, and improper disposal of documents to Defendant's Compliance Officers JoAnne Carew and Jeffrey [last name unknown] in Compliance Relations.

17. During Plaintiff's conversation with Compliance Relations, Plaintiff asked whether securities law required that Ms. Mittleman—an unregistered associate—have approval from an FA before moving money market funds into personal accounts. Both confirmed that

this was so. Ms. Carew then warned Plaintiff to be "careful" and not to "try to find things to get [Ms. Mittleman] into trouble."

18. On December 10, 2012, Defendant Associate Relations' employee Robin Murray contacted Plaintiff. Plaintiff reiterated her concerns about Ms. Mittleman actions. Ms. Murray told Plaintiff that Human Resources was looking into all issues unrelated to compliance.

19. In December 2012, Plaintiff compiled additional evidence to support her allegations of Ms. Mittleman's timecard violations and improper disposal of sensitive client information.

20. On January 2, 2013 Plaintiff confronted Ms. Mittleman with her allegations of impropriety.

21. On January 3, 2012, Ms. Murray contacted Plaintiff and told her that her continued complaints made her a "questionable leader."

22. Later the same day, Ms. Murray ordered Plaintiff not to discuss timecard or compliance issues again. She told Plaintiff to "get on board and shut your mouth or your job will be terminated."

23. Plaintiff called Defendant's Whistleblower line to report her concerns about Ms. Murray's threat to terminate Plaintiff.

24. On January 7, 2013, Plaintiff reiterated her concerns about Ms. Mittleman in a conversation with Business Development Coach Nathan Falk and LRM Division Leader Eric Bartlett. The two responded by informing Plaintiff that the company intended to place Plaintiff on a Performance Improvement Plan ("PIP"). Plaintiff informed the two that she had contacted

the company's Whistleblower line and was now considering finding an attorney. Mr. Bartlett told Plaintiff: "that sounds like a good idea."

25. On January 8, 2013, Plaintiff contacted Ms. Carew in Compliance. Plaintiff told Ms. Carew that she believed that Ms. Mittleman was breaking the law by trading in her own account.

26. Concerned that Ms. Mittleman's actions could negatively impact Plaintiff's own broker-dealer registration, Plaintiff requested that she be transferred to another branch and away from Ms. Mittleman in mid-January 2013. Mr. Thalman refused to allow Plaintiff to transfer.

27. In mid-January 2013, Plaintiff reiterated her concerns about Ms. Mittleman to Defendant's Compliance Officer Phil Wisely. Mr. Wisely stated that the timecard issue sounded like fraud and instructed Plaintiff to send all of her evidence to him along with a note stating that the evidence "is only to be opened by Phil Wisely."

28. The following week, Mr. Wisely told Plaintiff that it would be a good idea for her to meet with him and Ms. Murray to discuss the decisions that Human Resources and Compliance had made to date.

29. On January 30, 2013, after hearing nothing more from Ms. Murray or Mr. Wisely concerning the company's plans to address Plaintiff's concerns about Ms. Mittleman, Plaintiff emailed Ms. Murray to state her belief that Ms. Mittleman's actions may adversely affect Plaintiff's own broker-dealer registration. Ms. Murray responded by scheduling a meeting with Plaintiff and Mr. Wisely for 2 p.m. the following day.

30.     On January 31, 2013, Plaintiff met with Ms. Murray, Mr. Wisely (via telephone) and several others. The group questioned Plaintiff concerning her treatment of Ms. Mittleman. Ms. Murray asked why Plaintiff had continued to complain about Ms. Mittleman's timecard issues after Ms. Murray had instructed her not to. At the end of the meeting, Ms. Murray informed Plaintiff that she was not a "good fit" for Defendant Edward Jones, and that she had been terminated.

31.     Defendant terminated Plaintiff because she complained about SEC violations and violations of Arizona state law.

32.     Defendant falsely stated on Plaintiff's Form U5 Uniform Termination Notice for Securities Industry Registration that Plaintiff was terminated for "inappropriate professional conduct."

## COUNT ONE
## VIOLATION OF THE DODD-FRANK ACT

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Whiled employed by Defendant, Plaintiff made disclosures to Defendant about Ms. Mittleman's alleged Securities Exchange Commission rule violations.

35.     Plaintiff's disclosures concerning Ms. Mittleman's alleged malfeasance fall within the protection of Section 21F(h)(1)(A) of Dodd-Frank, 15 U.S.C. §78u-6(h)(1)(A).

36.     Defendant was aware that Plaintiff's allegations concerning Ms. Mittleman implicated matters protected by Section 21F(h)(1)(A) of Dodd-Frank, 15 U.S.C. §78u-6(h)(1)(A).

37. Edward Jones threatened, harassed, and discharged Plaintiff in retaliation for her allegations in violation of Section 21F(h)(1)(A) of Dodd-Frank, 15 U.S.C. §78u-6(h)(1)(A).

38. As a result of Edward Jones' violations of the Dodd-Frank Act, Plaintiff is entitled to relief in accordance with Section 21F(h)(1)(C) of Dodd-Frank, 15 U.S.C. §78u-6(h)(1)(C).

39. Under 15 U.S.C. §78u-6(h)(1)(C), Edward Jones is liable to Plaintiff for reinstatement with the same seniority status that she would have had, but for the discrimination; two times the amount of back pay otherwise owed to Plaintiff, with interest; and compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.

## COUNT TWO
## VIOLATION OF THE ARIZONA EMPLOYMENT PROTECTION ACT
## A.R.S. 23-1501

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Plaintiff had information concerning and a reasonable belief that an employee of Edward Jones had violated the statutes of the State of Arizona.

42. Plaintiff disclosed this information to representatives of Defendant whom Plaintiff reasonably believed were in managerial or supervisory positions and had the authority to investigate the information provided by Plaintiff and to take action to prevent further violations of the Constitution of Arizona or statutes of this State.

43. In violation of A.R.S. 23-1501, Defendant terminated Plaintiff because of her disclosures to Defendant that she had a reasonable belief that an employee of Edward Jones had violated the statutes of the State of Arizona.

44. As a direct result of her termination, Plaintiff has sustained emotional distress including loss of reputation, loss of profession, and emotional pain, suffering, and humiliation.

45. As a direct result of her termination, Plaintiff sustained damages in the form of lost compensation and the value of benefits.

46. Defendant's actions were malicious, intentional, and evidenced an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

## COUNT THREE
## DEFAMATION

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. When Defendant has falsely represented to future employers that Plaintiff was terminated for "inappropriate professional conduct."

49. Defendant has published this statement to third parties.

50. Defendant was negligent in failing to determine the truth of the statement.

51. Defendant's statement has caused Plaintiff damage.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in her favor against Defendant:

    a. Awarding Plaintiff reinstatement with the same seniority status that she would have had, but for the discrimination;

    b. Awarding Plaintiff two times the amount of back pay otherwise owed to Plaintiff, with interest;

    c. Awarding Plaintiff compensatory and Special damages to be proven at time

of trial;

d. Awarding Plaintiff punitive damages;

e. Awarding Plaintiff general damages for any impairment of Plaintiff's reputation and standing in the community;

f. Awarding Plaintiff compensation for litigation costs, expert witness fees, and reasonable attorneys' fees;

g. Awarding Plaintiff post-judgment interest, at the highest legal rate, on all awards from the date of such award until paid in full;

h. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that upon trial of this action, all issues be submitted to and determined by a jury except those issues expressly reserved by law for determination by the Court.

Dated:  January 30, 2014                    Respectfully submitted,

                                                                     **FOSTER & HAUER, PLC**

                                                                          /s/ Jonathan Hauer____
                                                                     Jonathan Hauer
                                                                     Attorney for Plaintiff